896 So.2d 230 (2005)
Catherine F. BOUDREAUX and Jarrod P. Boudreaux
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Doris Amador.
No. 2004-CA-1339.
Court of Appeal of Louisiana, Fourth Circuit.
February 2, 2005.
*232 Robert L. Hackett, Law Offices of Robert L. Hackett, L.L.C., New Orleans, LA, for Plaintiffs/Appellants.
Fred M. Trowbridge, Jr., Porteous, Hainkel & Johnson, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO, JR.).
PATRICIA RIVET MURRAY, Judge.
This is an appeal from a trial court judgment denying an insured's claim for penalties and attorney's fees under La. R.S. 22:658 and La. R.S. 22:1220. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
This case arises out of a February 24, 1998 motor vehicle accident. A vehicle driven by Catherine Boudreaux collided with a vehicle driven by Doris Amador. This suit followed. In the original petition filed on January 29, 1999, Ms. Boudreaux named as defendants Ms. Amador and her insurer, State Farm Mutual Automobile Insurance Company.[1] In addition to alleging fault on the part of Ms. Amador in causing the accident, Ms. Boudreaux alleged that State Farm, in its capacity as Ms. Amador's insurer,[2] was liable for its bad faith denial of Ms. Boudreaux's claim despite her providing it with complete and detailed proof of that claim.
On February 24, 2000, Ms. Boudreaux filed a first supplemental and amending petition adding a claim against State Farm in its capacity as her UM insurer; however, she failed to specifically allege a claim for penalties and attorney's fees against State Farm in that capacity. On that same date, State Farm's attorney forwarded to Ms. Boudreaux's attorney a check for $25,000, representing the face amount of Ms. Amador's liability policy. On March 13, 2001, the trial court signed an order partially dismissing Ms. Boudreaux's claims against State Farm with prejudice. Although this order dismissed Ms. Boudreaux's claims against Ms. Amador and State Farm in its capacity as Ms. Amador's insurer, it expressly reserved Ms. Boudreaux's rights against State Farm in its capacity as Ms. Boudreaux's UM insurer.
On July 24, 2001, State Farm filed a motion for summary judgment based on the affirmative defense of payment. Particularly, State Farm relied on the fact that on January 26, 2001, it made a second, unconditional tender of $25,000 to Ms. Boudreaux, representing the full per person policy limits under her UM policy. The trial court granted State Farm's motion and dismissed the suit. On Ms. Boudreaux's earlier appeal, this court reversed and remanded to allow Ms. Boudreaux leave to amend her petition to assert a claim for penalties and attorney's fees against State Farm in its capacity as her UM insurer. Boudreaux v. State Farm Mutual Automobile Ins. Co., XXXX-XXXX (La.App. 4 Cir. 8/14/02), 825 So.2d 558.[3]
*233 On remand, Ms. Boudreaux amended her petition to assert such a claim against State Farm.
At the time this case was tried, State Farm had tendered to Ms. Boudreaux her UM policy limits; thus, the only issue tried was whether Ms. Boudreaux was entitled to penalties and attorney's fees. Finding in State Farm's favor, the trial court dismissed Ms. Boudreaux's claims. This appeal follows.

DISCUSSION
The sole assignment of error asserted on this appeal is whether the trial court erred in finding in favor of State Farm on the issue of penalties and attorney's fees under La. R.S. 22:658, La. R.S. 22:1220, or both statutes.[4] The prohibited conduct under these two statutes is virtually identical: "the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause." Reed v. State Farm Mutual Automobile Ins. Co., XXXX-XXXX, p. 12 (La.10/21/03), 857 So.2d 1012, 1020 (citing Calogero v. Safeway Ins. Co. of Louisiana, 99-1625, p. 7 (La.1/19/00), 753 So.2d 170, 174). The primary difference between these two statutes is the different time periods allowed for payment  thirty days under La. R.S. 22:658 and sixty days under La. R.S. 22:1220. Id. Because these two statutes are penal in nature, they are strictly construed. Reed, XXXX-XXXX at pp. 12-13, 857 So.2d at 1020 (citing Hart v. Allstate Insurance Company, 437 So.2d 823, 827 (La.1983)).
The claimant seeking to recover under these two statutes has the burden of establishing three things: (i) that the insurer received a satisfactory proof of loss, (ii) that the insurer failed to pay the claim within the applicable statutory period, and (iii) that the insurer's failure to pay was arbitrary and capricious. Sterling v. U.S. Agencies Casualty Co., 2001-2360, p. 6 (La.App. 4 Cir. 5/15/02), 818 So.2d 1053, 1057.
In McDill v. Utica Mutual Ins. Co., 475 So.2d 1085, 1089 (La.1985), the seminal case on this issue, the Supreme Court defined a satisfactory proof of loss in the context of a UM coverage claim. In order to establish that the insurer received *234 a satisfactory proof of loss in such a claim "the insured must show that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or under insured; (2) that he [or she] was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages." McDill, 475 So.2d 1085, 1089 (La.1985).
A satisfactory proof of loss is a necessary predicate to a showing that the insurer was arbitrary and capricious. Reed, XXXX-XXXX at p. 13, 857 So.2d at 1021; Friedmann v. Landa, 573 So.2d 1255, 1260 (La.App. 4 Cir.1991). As a result, establishing the insurer's receipt of a satisfactory proof of loss is what triggers the running of the applicable statutory time limits. As the Louisiana Supreme Court in Reed noted, "[i]t logically follows from this burden [of establishing a satisfactory proof of loss] that a plaintiff who possesses information that would suffice as satisfactory proof of loss, but does not relay that information to the insurer is not entitled to a finding that the insurer was arbitrary or capricious." Reed, XXXX-XXXX at p. 13, 857 So.2d at 1020-21. Similarly, when "there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits." Reed, XXXX-XXXX at p. 13, 857 So.2d at 1021 (citing Block v. St. Paul Fire & Marine Ins. Co., 32,306, p. 7 (La.App. 2 Cir. 9/22/99), 742 So.2d 746, 751).
The narrow issue presented on this appeal is whether the trial court erred in finding that Ms. Boudreaux failed to establish that State Farm received a satisfactory proof of loss so as to trigger the statutory time limits. Particularly, the dispute is over the fourth element described in McDill: whether Ms. Boudreaux "fully apprised" State Farm of the extent of her damages caused by the accident. More particularly, the dispute, as the trial court framed it, is whether Ms. Boudreaux fully apprised State Farm of her back surgery.
Ms. Boudreaux argues on appeal, as she did at trial, that she furnished State Farm with a complete, detailed proof of loss in the form of her deposition, taken on January 29, 1999, and correspondence, dating from March 19, 1998 through August 27, 2002. She asserts that she made a diligent effort at every juncture to inform State Farm of the serious nature of her back injury. She thus contends that the evidence she submitted was sufficient to support her claim that State Farm was arbitrary and capricious in failing to tender her UM policy limits for over a year after her deposition was taken and two years after her suit was filed.
State Farm counters that it was never provided a satisfactory proof of loss in that Ms. Boudreaux never provided it with medical records of the lumbar fusion performed on September 20, 2000. State Farm stresses that it obtained such medical records through its own proactive efforts in seeking discovery regarding the surgery from Dr. Whitecloud. State Farm further stresses that within thirty days of obtaining those medical records it paid the UM policy limits.
In evaluating (and ultimately rejecting) Ms. Boudreaux's claim for penalties and attorney's fees, the trial court made the following detailed chronological factual findings; to-wit:
 On May 4, 2000, a discography of Ms. Boudreaux's lumbar spine was performed by Dr. Kay at Ochsner Clinic and was reported as showing normal appearing disc at L4-5 and L5-S1.
 As of May 15, 2000, Dr. Parks at Ochsner Clinic, had informed the plaintiff *235 that he did not recommend surgical treatment and specifically, he did not recommend a multi-level lumbar fusion based upon the results of the May 4, 2000 discogram, which was indicative of multi-level degenerative disc disease and the reproduction of pain behavior, with concordant pain provocation when the disc was injected.
 On May 22, 2000, Ms. Boudreaux's counsel forwarded a copy of Dr. Parks' medical report to State Farm and its counsel.
 In June 19, 2000, Ms. Boudreaux presented to Dr. Whitecloud with complaints of low back pain. Upon examination, Dr. Whitecloud's impression was that of degenerative disc disease with discogenic pain at L4-5 and L5-S1. Dr. Whitecloud noted that he and Ms. Boudreaux "discussed interbody fusion at both these levels and she will follow up in six weeks or call us if she desires surgery." (Emphasis supplied).
 On September 20, 2000, Dr. Whitecloud performed a lumbar fusion at L-4-5 and L5-S1, with postoperative diagnosis of degenerative joint disease L4-5 and L5-S1.
 On October 9, 2000, Ms. Boudreaux's counsel sent a letter to defense counsel which contained "a copy of 9/27/00 correspondence and enclosures received from client."
 According to defense counsel, the 9/27/00 correspondence from Ms. Boudreaux consisted of a handwritten note stating that she underwent surgery on 9/21/00. This was reflected in the October 30, 2000 correspondence that State Farm's counsel sent to Tom Roshto, Claim Specialist  State Farm.
 On October 17, 2000, plaintiffs' counsel sent correspondence to State Farm's counsel indicating that he was enclosing "a copy of Dr. Whitecloud's progress notes and narrative report."
 On October 23, 2000, State Farm's counsel, via facsimile transmission, received the June 19, 2000 clinic note by Dr. Whitecloud and a physician progress note of August 1, 2000.
 On October 27, 2000, in response to the facsimile transmission of Dr. Whitecloud's June 19, 2000 clinic note, State Farm's counsel forwarded an executed medical authorization to Dr. Whitecloud.
 State Farm's counsel received no response to the medical authorization sent to Dr. Whitecloud. No certified medical records or other independent evidence of the surgery were transmitted by the plaintiffs.
 On December 20, 2000, a notice of deposition (for records only) and subpoena duces tecum was issued to Dr. Whitecloud.
 On January 2, 2001, the complete records of Dr. Whitecloud, including the surgery records of 9/20/00, were sent to State Farm's counsel in response to the subpoena duces tecum. These records verified that Ms. Boudreaux had undergone a lumbar fusion at L4-5 and L5-S1 on September 20, 2000.
 On January 15, 2001, after receiving the complete records of Dr. Whitecloud, State Farm issued a check in the amount of $25,000, which represented a tender of the UM limits afforded plaintiff.
 On January 25, 2001, State Farm's counsel sent the check to Ms. Boudreaux's counsel, who acknowledged receipt of same on January 26, 2001.
 A check for the remainder of the medical payments coverage in the amount of $4,397.02 was forwarded to Ms. *236 Boudreaux's counsel on February 12, 2001.[5]
The above findings accurately reflect State Farm's knowledge at the time of its actions in handling Ms. Boudreaux's UM claim. Given those facts, the trial court found that Ms. Boudreaux failed to satisfy the requirement under McDill that she provide State Farm with a satisfactory proof of loss because she failed to provide State Farm with the medical records of the lumbar fusion performed on September 20, 2000. Explaining its decision, the trial court, in its reasons for judgment, stated:
[T]he evidence demonstrates that at no time did plaintiffs provide State Farm with any independent verification of the surgery performed on Ms. Boudreaux. In fact, the only "evidence" of any surgery before January 2, 2001, was a handwritten note from the plaintiff. The information regarding a surgery was only obtained by State Farm in response to a Subpoena Duces Tecum issued to Dr. Whitecloud on December 20, 2000, after Dr. Whitecloud failed to respond to State Farm's October 30, 2000 request for medical records with an attached signed medical authorization form from the plaintiff. Within 30 days receipt of the subpoenaed medical records from Dr. Whitecloud which confirmed 1) that plaintiff had opted to have the surgery he recommended back in June 2000 and 2) that said surgery had been performed in September 2000, State Farm tendered the UM limits of plaintiffs' policy. (Emphasis in original).
Because it concluded that Ms. Boudreaux failed to provide a satisfactory proof of loss to State Farm, the trial court found that the statutory time limitations were never triggered.
"Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action." Reed, XXXX-XXXX at p. 14, 857 So.2d at 1021. A trial court's determination that an insurer's handling of a claim was not arbitrary, capricious, or without probable cause is thus a factual finding that may not be disturbed on appeal absent manifest error. Reed, XXXX-XXXX at p. 14, 857 So.2d at 1021 (citing Scott v. Insurance Co. of North America, 485 So.2d 50, 52 (La.1986)); Calogero, 99-1625 at p. 5, 753 So.2d at 173 (citing Brinston v. Automotive Cas. Ins. Co., 96-1982 (La.App. 4 Cir. 12/3/97), 703 So.2d 813, 816). Likewise, a trial court's determination that an insurer was not provided with a satisfactory proof of loss is a factual finding that may not be disturbed on appeal absent manifest error.
Considering the totality of the evidence in this case, we cannot say that the trial court was manifestly erroneous in finding that Ms. Boudreaux failed to provide State Farm with a satisfactory proof of loss. Moreover, given the dispute over the severity of Ms. Boudreaux's back injury, we cannot say that the trial court was manifestly erroneous in its implicit finding that State Farm's payment schedule was reasonable. We thus find no error in the trial court's decision rejecting Mrs. Boudreaux's claim for penalties and attorney's fees.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Ms. Boudreaux's husband is also a named plaintiff; he asserts a loss of consortium claim. For ease of discussion, we refer singularly to Ms. Boudreaux as the plaintiff.
[2] As discussed elsewhere, State Farm is also the uninsured motorist insurer of Ms. Boudreaux.
[3] Despite our agreement with State Farm's procedural argument that statutory penalties are special damages that must be specifically alleged, we found State Farm's failure to include legal interest in the payment precluded it from obtaining summary judgment and for that reason reversed and remanded. Boudreaux v. State Farm Mutual Automobile Ins. Co., XXXX-XXXX (La.App. 4 Cir. 8/14/02), 825 So.2d 558. The record on the instant appeal reflects that after our decision in Boudreaux, State Farm on October 1, 2002, sent Ms. Boudreaux's counsel a check in the amount of $3,521.46, representing the interest on her UM policy limits.
[4] Section 658(B)(1) provides:

Failure to make such payment within 30 days after receipt of such satisfactory proofs and demand therefore, as provided in La. R.S. 22:658(A)(1) ... when such failure is found to be arbitrary, capricious or without probable cause, shall subject insurer to a penalty, in addition to the amount of loss, of ten percent damages on the amount to be found to be due from the insurer to the insured or one thousand dollars, whichever is greater, payable to the insured ... together with all reasonable attorney fees for the prosecution and collection of such loss. La. R.S. 22:658(B)(1).
Section 22:1220(B) provides:
Anyone of the following acts, if knowingly committed or performed by an insurer constitutes a breach of the insurer's duties imposed in Subsection A;
. . .
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious or without probable cause. La. R.S. 22:1220(B)(5).
[5] As noted earlier in this opinion, the record also reflects that on October 1, 2002, State Farm's counsel sent a check for the amount of $3,521.46, representing interest on the UM policy limits to Ms. Boudreaux's counsel.